■ PRISCILLA R. HASKINS, Appellant-Respondent, v LOEB RHOADES & Co., Respondent-Appellant.—Order, Supreme Court, New York County, entered on or about September 10, 1979, and judgment entered thereon on September 14, 1979, affirmed on the opinion of Kassal, J., at Special Term, without costs and without disbursements. Concur—Kupferman, Sullivan and Carro, JJ; Murphy, P. J., and Lupiano, J., dissent in separate memoranda as follows.

Murphy, P. J. (dissenting). The burden of proof in a motion for summary judgment rests upon the moving party. Evidence must be produced which eliminates material and triable issues of fact, even where the opposing papers are insufficient. *(Monroe Abstract & Tit. Corp. v Giallombardo,* 54 AD2d 1084, 1085.) The adversary's version of the facts must be accepted with respect to all points as to which there is a bona fide controversy of fact *(Cannon v Pfleider,* 19 AD2d 625). With these principles in view, the record will be examined to determine whether Special Term should have granted summary judgment dismissing the complaint. In this discussion, particular emphasis will be placed upon the testimony elicited at the examinations of Priscilla Haskins and Mark Millard. Plaintiff Haskins was a junior employee of defendant Loeb Rhoades & Co. (Loeb). In 1970, she introduced an individual named Lee Ratner to Mark Millard, a senior partner in Loeb. Ratner was interested in obtaining financing for a real estate development

751

in Florida. Eventually, a joint venture was formed for that purpose under financing received from Marine Midland Bank. Ratner's family apparently controlled two of the companies in that joint venture, viz., Leeco Gas and Oil Development Company and Real Estate American Corporation. A third company, Apco Development Corporation, also took part in the joint venture. There is an indication that some of the partners in Loeb may have had an interest in Apco. Plaintiff maintained that she had entered into a cofinders' agreement with Loeb. Upon that basis, she sought the recovery of $87,500; this figure represented 35% of the venture. Millard, on behalf of Loeb, averred that no services had been rendered by Loeb as a finder. He stated that Loeb's fee was received for certain investment banking services supplied to the joint venture. Millard further asserted that plaintiff had rendered her services in her capacity as an employee of Loeb. Millard stated that the check in the sum of $7,320, which had been rejected by plaintiff, was offered to her as a discretionary bonus. Special Term denied plaintiff's motion for summary judgment and granted defendant's cross motion for that same relief. Essentially, that court found that plaintiff could not recover a finder's fee because there was no written memorandum evidencing such an agreement with Loeb (General Obligations Law, § 5-701, subd a, par 10). It found no merit to plaintiff's claim that she was a cofinder because her relationship with Loeb lacked the basic characteristics of a joint venture (Dura v Walker, Hart & Co., 27 NY2d 346, 350). In its opinion, the court did not address itself to that branch of defendant's cross motion as sought to strike the complaint for plaintiff's willful failure to make disclosure. That branch of the cross motion was denied in the order entered September 17, 1979. For the following reasons, Special Term should have denied the branch of defendant's cross motion for summary judgment. First, a triable issue of fact existed as to Loeb's exact role in this commercial enterprise. Millard made the bare and unsubstantiated statement that the $250,000 fee was not received by Loeb for any services rendered as a finder. However, Millard made no attempt to detail the services rendered by Loeb for the joint venture nor does the record otherwise indicate that fact. It was Loeb's obligation, upon its cross motion for summary judgment, to specify the exact nature of its role in the joint venture. Loeb's proof is inexplicably silent in this regard. Furthermore, on this same point, a comparison of the depositions of Haskins and Millard raises many factual issues as to the relationship of Haskins and Loeb in this commercial transaction. Haskins' testimony permits a strong inference that Millard promised her a fee of 25 to 35% if the joint venture "worked out". Specifically, Haskins stated: "But Mr. Millard called me at my office that morning. He had taken the information from Mr. Ratner's apartment, and he called to tell me that he had shown all of the information that he had taken to several of his partners and they were most enthusiastic about the Bayway deal, and he felt very good about it. He thought that was the kind of situation that could result in a very healthy fee for Loeb Rhoades, and if that deal should go through in the manner that John, my husband, had explained, then I could expect to receive a rather large fee, somewhere in the area of 25 to 35 percent. So I do know that Mr. Millard was in the office that morning, and I think that I might have led you to believe that I didn't know he was in that day, and actually I don't know if he was there in the afternoon. I didn't speak with him in the afternoon. * * * That is when John explained the joint venture, and Mr. Millard then turned to me and said that he liked that idea very much and however the deal was done, if it were, if the transaction were completed, I would certainly receive a fee, possibly 10

percent, but he felt that according to the outline that John gave him, it would be somewhere closer to 25 or 35 percent. If it worked out just as John explained it, it would be 35 percent. That was reiterated in the telephone conversation the following morning". During his examination, Millard stated that Loeb did not expect the acquisition of new clients to be a main function of a junior employee such as Haskins. However, Loeb did expect that all employees would be keenly aware of any business opportunities for the firm and bring those opportunities to the attention of the firm. Millard did not believe that he could have made the flat statement that Haskins' compensation would be 35%. He did admit that in a few special cases Loeb had paid individuals as much as 35%. Millard made the following comments upon Haskins' claim that she was entitled to 25 to 35% of the total fee: "Yes. I think we did talk about compensation. As I testified a little earlier, at some point—I can't remember exactly when—I told Mrs. Haskins that if she contributed to our making this deal, she would receive special compensation. I do not recall anything like the statement to which I just referred, and particularly a statement that if it—I quote now, 'If it worked out just as John explained it, it would be 35 percent.' End of quotation. * * * I may have very well said that this deal, if everything would turn out favorably, would result, and I quote, in a very healthy fee for Loeb, Rhoades, unquote, but I definitely do not believe that I talked about these very high rates of compensation for Mrs. Haskins' contribution at this time, because it would have been not very wise of me to do that, given the general principles which applied to employees' compensation. * * * I am aware of the fact that we sent a check representing a special fee of $10,000, less applicable taxes. * * * That was in consideration of her contribution to the deal in connection with which we received fees from the Ratners and from Apco." Based upon the foregoing excerpts from Millard's deposition, the following observations and conclusions may be made. Despite Millard's contention in his affidavit that the check was offered to plaintiff as a bonus, his testimony supports the conclusion that he promised to pay plaintiff if the joint venture "worked out". Moreover, Millard's testimony reveals that he was not certain what he promised the plaintiff. His testimony was continually prefaced by such shaky phrases as "I believe", "I think", and "I can't remember". This uncertainty on his part militates against any award of summary judgment to Loeb. A trier of fact could find that it was extraordinary for a junior employee to bring a client of significant size to the attention of Loeb. Likewise, it could be found extraordinary for Loeb to give a so-called "bonus" in the sum of $10,000 to a junior employee. In special cases, Loeb had concededly paid an individual as much as 35% of a fee. Upon the inadequate record presented, it is premature to discount any effort that plaintiff may have made as a finder. As the Court of Appeals has stressed, it is possible for a finder, such as plaintiff Haskins, to accomplish her service by making only two telephone calls (Minichiello v Royal Business Funds Corp., 18 NY2d 521, 527). Thus, even if it were assumed that the Statute of Frauds was operable in this case, plaintiff should be given the opportunity to prove at trial that she and Loeb were cofinders. (Dura v Walker, Hart & Co., supra.) A second reason for denying the branch of the cross motion for summary judgment is that a triable issue exists as to whether Loeb waived the affirmative defense based upon the Statute of Frauds. The trier of fact must decide whether Loeb definitely promised to make a special payment to plaintiff or whether the payment was discretionary. If it is found that such a promise was made, then the Statute of Frauds (General Obligations Law, § 5-701, subd a, par 10) was effectively waived by Loeb. Normally, an oral

agreement will not be enforced if it violates a particular provision in the Statute of Frauds. Nonetheless, an oral agreement, otherwise violative of the Statute of Frauds, will be enforced if the party to be charged voluntarily admits its existence. *(Zlotziver v Zlotziver,* 355 Pa 299; *Powers v Hastings,* 20 Wash App 837; *Peacock Realty Co. v Crandall Farm,* 108 RI 593; *Sealock v Hackley,* 186 Md 2d 49; 15 ALR2d 1330, Failure to Object to Parol Evidence, or Voluntary Introduction Thereof, As Waiver of Defense of Statute of Frauds, § 9, p 1348; see, generally, Stevens, Ethics and the Statute of Frauds, 37 Cornell LQ 355). In *Zlotziver (supra),* the Supreme Court of Pennsylvania made this relevant comment upon the point under discussion (pp 302-303): "As to the first of these defenses, it is, of course, true that an oral agreement for the conveyance of land will not be enforced unless followed by change of possession and the making of such permanent improvements on the property as cannot be adequately compensated in damages: *Glass v. Tremellen,* 294 Pa. 436, 144 A. 413; *Brotman v. Brotman,* 353 Pa. 570, 46 A.2d 175; *Estate of Lena Hartzell,* 114 Pa. Superior Ct. 190, 173 A. 842. The statute of frauds, however, does not absolutely invalidate an oral contract relating to land but is intended merely to guard against perjury on the part of one claiming under the alleged agreement. Accordingly, if the title holder admits, either in his pleadings or his testimony, that he did in fact enter into the contract, the purpose of the statute of frauds is served and the oral agreement will be enforced by the court: *Sferro v. Urling,* 328 Pa. 161, 167, 168, 195 A. 422, 425, 426; *Williams v. Moodhard,* 341 Pa. 273, 280, 281, 19 A.2d 101, 104, 105; *Shaffer v. Shaffer,* 344 Pa. 158, 161, 23 A.2d 883, 885". In his testimony, Millard never admitted that an agreement existed in the form advanced by plaintiff. However, as was previously mentioned, a trier of fact could reasonably find that the parties did reach an agreement. The only element placed in dispute by Millard's testimony would appear to be the amount of compensation promised by Millard to plaintiff. Because of this factual variation in Millard's testimony on the element of compensation, this proceeding does not fall squarely within the exception set forth in *Zlotziver.* Nonetheless, the *Zlotziver* "exception" should be extended to cover this factual situation. Viewing Millard's testimony most favorably to the plaintiff, there is a recognition in that testimony of an oral agreement between these two parties. By thus conceding the existence of the oral agreement, Millard effectively waived the Statute of Frauds. As is generally the case, the ultimate question as to whose version of the oral agreement is correct is a matter that should be resolved at trial. There is a third reason for denying summary judgment to the defendant. It will be assumed, as was actually found by Special Term, that the Statute of Frauds is operable and that plaintiff and Loeb were not cofinders. In effect, plaintiff's own proof will be considered totally valueless. Nonetheless, a motion for summary judgment searches the record. Consequently, it is possible that the plaintiff could be accorded summary relief upon the proof adduced by defendant Loeb. Again, emphasis must be placed on those portions of Millard's testimony as suggest that the parties reached an agreement as to plaintiff's compensation. A jury should be allowed to determine whether the parties ever reached an agreement, and if they did, the amount due to plaintiff thereunder. Upon the present record, the defendant did not make a proper showing that the disclosure, already had of plaintiff and her husband, was inadequate. I would deny the branch of the cross motion to strike the complaint with leave to renew upon a proper showing. Accordingly, the judgment of the Supreme Court, New York County, entered September 4, 1979, dismissing the complaint, should be

reversed, on the law, and the order of the Supreme Court, New York County, entered September 7, 1979, should be modified, on the law, by denying the branch of the cross motion for summary judgment and by granting defendant leave to renew the branch of the cross motion to strike upon a proper showing, and, as modified, the order should be affirmed.

Lupiano, J. (dissenting). While the New York Statute of Frauds in express terms declares that agreements within its ambit are *void* if not in writing (General Obligations Law, §§ 5-701, 5-703), the construction generally placed on the statute is that an oral agreement embraced within the prohibition of the statute is merely unenforceable or voidable, rather than absolutely void (see *McKenna v Meehan,* 248 NY 206; *Matthews v Matthews,* 154 NY 288; *Wikiosco, Inc. v Proller,* 276 App Div 239; *Exeter Mfg. Co. v Marras,* 254 App Div 496). "Since an oral contract within the statute of frauds is considered unenforceable merely rather than completely void, it follows that the protection or benefit of the statute, which is a defense personal to the party to be charged and his privies, may be effectively waived by the party entitled to its protection or benefit, thereby rendering the contract binding and enforceable against himself" (56 NY Jur, Statute of Frauds, § 335). Waiver may be effected by, *inter alia,* failure to plead the defense of the statute or by the *defendant's taking certain affirmative steps* in the litigation inconsistent with an intention to rely on the defense or by failure to object to the introduction of evidence of a parol agreement (see 56 NY Jur, Statute of Frauds, § 336). As we are concerned here with the *drastic* remedy of a motion for summary judgment and as the key to the procedure on such motion is "Issue-finding, rather than issue-determination" *(Esteve v Abad,* 271 App Div 725, 727; see, also, *Sillman v Twentieth Century-Fox Film Corp.,* 3 NY2d 395), and as it has been held that summary judgment relief should be denied where a factual issue precluding such relief is fairly arguable *(Barrett v Jacobs,* 255 NY 520), I perceive merit in the well-delineated dissent of the Presiding Justice. Accordingly, as I view the factual issue of waiver of the Statute of Frauds to be fairly arguable on the record herein, I join Presiding Justice Murphy in concluding that summary judgment relief is not warranted dismissing the complaint on such record. No legal exegesis or litany of legal citations is required to support the self-evident proposition that the Statute of Frauds is a shield against fraud and perjury and is not a weapon to be utilized to accomplish fraud or obtain unjust enrichment. Pretrial disclosure, as set forth in the record, sufficiently lends support to plaintiff's pleading so as to defeat summary judgment at this point. As I perceive the matter, there is nothing in the law preventing a litigant being sued on an oral agreement as to which that litigant has raised, by way of responsive pleading the bar of the Statute of Frauds, from admitting in good conscience the existence of such contract, whether in the course of pretrial disclosure, at trial, or partly in pretrial disclosure and partly at trial. It appears that enough has been demonstrated by way of pretrial disclosure herein to indicate, at least in part, an admission as to the existence of such contract. This fact generates inquiry into whether, in effect, the Statute of Frauds is being waived, has been waived, or is susceptible of being construed as waived for the accomplishment of truth and justice and the avoidance of unjust enrichment. Further, such issue of waiver having arisen in some fashion, common sense and reason dictate that a plenary trial, where the parties and witnesses testify before a trial court and jury or, if tried without jury, before the court alone, is a more suitable vehicle for vindication of the truth. Summary judgment is decided on papers, on the printed word, which papers cannot be cross-examined and

exposed to human wisdom and experience such as it is, as can the parties and witnesses who testify at a trial.